## Richmond.

BAER v. INGRAM.

FEBRUARY 7, 1901.

1. JUDGMENT—*Agreement Not to Issue Execution—Rights of Third Persons.*
   A contract between a plaintiff and defendant in a judgment that no
   execution shall issue thereon for a given time is a personal matter
   between the parties, and no advantage can be taken of it by third
   persons not parties to the contract.
2. EXECUTION—*Agreement Not to Issue—Effect of Quashing Subsequent
   Executive Liens.*—The effect of an order quashing an execution on a
   judgment, because issued in violation of an express contract be-
   tween the plaintiff and the defendant that no execution should issue
   for a given time, cannot be construed as impairing or suspending,
   as against third persons, the lien of a prior execution issued on the
   same judgment, though in contravention of same agreement.

Appeal from a decree of the Circuit Court of Alleghany
county, pronounced March 26, 1900, in the chancery cause of
*Kelley and Others* v. *Kelley and Others,* in which appellant filed
his petition.

*Reversed.*

The opinion states the case.

*Benjamin Haden* and *John T. Delaney,* for the appellant.

*R. L. Parrish & Son,* for the appellees.

KEITH, P., delivered the opinion of the court.

S. J. Brooks and Rosalie Brooks, his wife, O. F. Richter
and Nora K. Richter, his wife, being indebted to Ben Baer in

the sum of $555, with legal interest from the 13th of May, 1893, confessed a judgment for the amount of said indebtedness in the clerk's office of the Circuit Court of Alleghany county on the 27th day of June, 1893. Upon this judgment an execution was issued on the same day and went into the hands of the sheriff to be levied. This execution was returned " no property found except that which is covered by deeds of trust, July 6, 1893, L. A. Saunders, deputy sheriff of Alleghany county." On the 5th of September, 1893, another execution was issued which was returned on the same day " no property found." Thereupon a garnishee process was sued out of the clerk's office by Ben Baer, returnable on the first Monday in September, 1893, which suggested that there was a liability by reason of the lien of the last mentioned writ of *fieri facias* upon the part of the Chesapeake and Ohio Railway Company, and requiring said company to appear on the first day of the March term, 1894, to answer said suggestion. On the 11th of September, the defendants in the execution served upon the plaintiff a notice that they would, on the 25th of that month, move the judge of the Circuit Court of Alleghany county in vacation to quash the execution of September 5th. ·Accordingly, they appeared before the judge and presented a petition in which they set forth that they were indebted to Ben Baer in the sum of $555, with interest from the 13th of May, 1893, until paid, and that on the 25th of May they had entered into a contract with Baer by which Brooks and Richter agreed that if Baer would not issue any execution prior to the 18th of March, 1894, they and their wives would confess judgment in his favor upon the debt; that on the 25th of May, 1893, the agreement was reduced to writing, was signed by Brooks and Richter and by Samuel Baer as the agent and attorney of his brother, Ben Baer; that on the 27th of June, after the writing was executed, and in pursuance of its terms, the defendants in the execution executed a power of attorney authorizing one J. W. Payne to confess judgment against them and in favor

of Baer on the debt aforesaid, which power of attorney was executed in pursuance of the terms of the agreement already cited and that their attorney on the 27th of June, 1893, did confess judgment.

The petitioners further state that on the 21st of August, 1893, they paid to Ben Baer the sum of $125.31 and took his receipt, which is exhibited with the petition. They then set forth that Baer, in disregard of his contract and of the conditions upon which the judgment was confessed, sued out an execution on the said judgment, on the 5th day of September, 1893, for the whole of the sum of $555, with interest thereon from the 13th day of May, and $7.20 costs.

They allege that the execution is illegal for the following reasons: That by the terms of the contract in writing above referred to, the judgment was confessed upon the condition that no execution should issue thereon prior to the 18th of March, 1894; and, secondly, because the said execution was issued for the whole amount of the original judgment, without regard to a credit of $125.31, which had been paid upon it. Thereupon the Circuit Court entered the following order:

" In the Circuit Court of Alleghany county, Virginia.—In vacation.
S. J. Brooks, O. F. Richter, Rosalie
Brooks, and Nora K. Richter.

         *v.*

Ben Baer."

" Upon a motion to quash a writ of *fieri facias.*

" This day came the plaintiffs by their attorney, and it appearing to the undersigned judge of the Circuit Court of Alleghany county that due notice has been given the defendant of a motion to be made before me, the said judge, this day, at Warm Springs, Virginia, to quash a certain writ of *fieri facias,* issued from the

clerk's office of the said court, on the 5th day of September, 1893, and made returnable to the first Monday in November, 1893, which writ is for the sum of five hundred and fifty-five dollars, with legal interest thereon from May 13, 1893, until paid, and $7.20 costs, and is in favor of the said Ben Baer and is against the said S. J. Brooks, O. F. Richter, Rosalie Brooks and Nora K. Richter, and the said motion having been duly considered, and it appearing satisfactorily that the said writ, or the judgment on which it is based, is entitled to a credit of one hundred and twenty-five and 31-100 dollars, as of August 21, 1893, which is not endorsed thereon, and it further appearing that said writ was issued in violation of the express provisions of a contract in writing between the parties, plaintiff and defendant, it is ordered that the same be hereby quashed and made null and void, and that the plaintiffs in this motion recover from the defendant thereto their costs about their suit in this behalf expended. And it is further ordered that the clerk of the Circuit Court of Alleghany county, spread this order upon the Common Law Order Book of said court as an order made in vacation by the judge of said court, and that the said clerk make such further endorsement on the records of said court as may be necessary to give full effect to this order.

" Witness my hand at Warm Springs, Virginia, in vacation, this 25th day of September, 1893.

" WILLIAM McLAUGHLIN,
"Judge Circuit Court of Alleghany County."

As far as we can gather from a very confused and imperfect record, there was pending at this time a chancery cause in the Circuit Court of Alleghany county, having for its object the settlement of the estate of John Kelley, deceased, under whose will Rosalie Brooks and Nora K. Richter were beneficiaries; that Baer claimed a lien upon these legacies by virtue of the

execution dated 27th June, 1893, and returned " No property found, July 6, 1893." (Known in the record as the " First Execution.") There was a reference to a commissioner in the suit of *Kelley* v. *Kelley* to ascertain the liens and he reported in favor of the lien of Baer's execution, and this report, without exception, was confirmed.

Subsequently, at the instance of other creditors, the matter was again referred to a commissioner, who reported that if Baer by the issuing of the first execution acquired any lien, " it ceased, when by the decision and judgment of the court upon the motion to quash the execution, the right of the said Baer to have execution upon his said judgment was—not in express terms, but virtually—suspended until the said 18th day of March, 1894"; and this report having been confirmed, the appellant applied for and was refused a rehearing, and thereupon obtained an appeal to this court.

The sole question which we shall consider is the effect of the order entered by the judge of the Circuit Court upon the motion quashing the execution issued September 5, 1893, upon the lien acquired by virtue of the execution issued on the 27th day of June upon the same judgment.

Section 3601 provides that "every writ of *fieri facias* shall * * * * * * be a lien from the time it is delivered to the sheriff or other officer to be executed, on all the personal estate of or to which the judgment debtor is, or may afterwards and before the return day of said writ become, possessed or entitled, and which is not capable of being levied on," with certain exceptions which need not here be mentioned.

Section 3602 provides that "the lien acquired under the preceding section shall cease whenever the right of the judgment creditor to enforce the judgment by execution, *scire facias,* or action ceases; or is suspended by a forthcoming bond being given and forfeited, by *supersedeas,* or by other legal process."

The appellant acquired a lien under section 3601. The con-

troversy, therefore, arises upon section 3602, as to when the lien ended, the contention of appellee being that the judgment of the Circuit Court quashing the second execution is to be construed as such legal process as suspends the right of the judgment creditor to enforce the lien of his judgment by execution.

We need not inquire into the correctness of the judgment rendered; no question is raised upon it. The parties were before the judge who had jurisdiction of them, and of the subject matter. That subject matter was the motion to quash the execution of September, 1893. The parties were before him to answer no other complaint, and the judgment undertakes to do nothing more than was strictly within the jurisdiction of the judge. The order recites that it appearing satisfactorily "that the said writ, or the judgment on which it is based, is entitled to a credit of $125.31, as of August 21, 1893, which is not endorsed thereon, and it further appearing that said writ was issued in violation of the express provisions of a contract in writing between the parties, plaintiff and defendant, it is ordered that the same be hereby quashed and made null and void."

Neither the motion, the petition, nor the judgment makes any reference whatsoever to the first execution, and no effect can be given to it by construction which the judge who entered it could not have given to it by express recital, and we repeat, that the notice and petition which were the foundation of the proceeding before the judge and by which his judgment is to be measured and its effect interpreted, make no reference whatever to any execution save that which was quashed. If therefore, the order had by express recital undertaken to disturb the lien under the prior execution, it would have been invalid as in excess of the jurisdiction of the judge who rendered it in the proceedings before him. The ground upon which the execution was quashed, now relied upon by the appellees, is that the issuance was de-

clared to be in violation of the contract in pursuance of which the judgment was confessed. That contract was one personal to the plaintiff and defendant. It did not operate for the benefit of the appellees, who were not parties to it; and those for whose benefit it was intended are making no controversy with the appellants. It might very well be that the execution debtors were insisting upon their creditor conforming to the contract between them with respect to the enforcement of his execution upon the particular property sought to be subjected by process of garnishment and were interposing no objection to its enforcement upon other property. However that may be, the fact remains that they did cause the one execution to be quashed; and that they did not ask that the other should be quashed; and that they have, so far as this record shows, made no objection to its being enforced as a lien upon the interests arising under the will of John Kelley, deceased. We do not consider the order of the judge as having any other operation than to quash the execution at which it was directed. It in no respect and in no degree operated upon the judgment or affected the right of the plaintiff in the judgment to enforce it by execution, *scire facias*, or action. It does not in terms attempt to do so; nor does such an order come within the spirit of section 3602. Every process enumerated in that section, by which the right of the creditor to enforce his judgment is suspended, gives to him an adequate and sufficient substitute for that right. The forthcoming bond given and forfeited provides additional security for the debt; so does the *supersedeas*, and the other legal process, whatever it may be, would, we think, be such as would give to the creditor an equivalent for that of which he is deprived; as for instance the process of injunction. Upon this view we are not called upon to decide. It is sufficient for this case, that the effect of the judgment quashing the execution, which is set forth in the record

cannot be construed as impairing or suspending the lien of the first execution.

For these reasons the decree of the Circuit Court must be reversed, and the cause remanded for further proceedings to be had in accordance with the views expressed in this opinion.

*Reversed.*